**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

COLLEEN DREW,
an individual,

      Plaintiff,

v.

Case No.:

NATIONSTAR MORTGAGE LLC,
D/B/A MR. COOPER,
a foreign limited liability company,
EQUIFAX INFORMATION
SERVICES, LLC,
a foreign limited liability company, and
TRANS UNION, LLC,
a foreign limited liability company,

      Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, COLLEEN DREW (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sue Defendants, NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER (hereinafter, "Nationstar"), EQUIFAX INFORMATION SERVICES, LLC (hereinafter, "Equifax"), and TRANS UNION, LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1. This is an action brought by an individual consumer for damages for Nationstar's violation of the Fair Credit Reporting Act ("FCRA") wherein Nationstar

1

unlawfully reported an alleged mortgage account as past due in Plaintiff's consumer credit files and credit reports as maintained by Equifax and Trans Union.

2. More specifically, despite Plaintiff advising Nationstar that she was not past due on the alleged account, and after Plaintiff disputed Nationstar's reporting of such erroneous information directly to Equifax and Trans Union- Nationstar *continued* to report the account as past-due.

3. Furthermore, this is an action for damages for Equifax's and Trans Union's violations of the Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") FCRA wherein Equifax and Trans Union each continued to incorrectly report Plaintiff's Nationstar account as late and past-due after Plaintiff repeatedly advised that such account was not past due, and after Plaintiff provided information to Equifax and Trans Union proving the same.

4. Finally, this is an action against Nationstar for breach of contract.

## JURISDICTION, VENUE & PARTIES

5. Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq.*, and supplemental jurisdiction exists permitting Plaintiff's breach of contract claims pursuant to 28 United States Code, Section 1367.

6. Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

7. Venue is proper in this District as the acts and transactions described herein occur in this District.

8. At all material times herein, Plaintiff is a natural person residing in Highlands County, Florida.

9. At all material times herein, Nationstar conducts business in Florida.

10. At all material times herein, Nationstar Mortgage LLC is a foreign limited liability company with its principal place of business located at 8950 Cypress Waters Blvd, Dallas, Texas 75019.

11. At all material times herein, Nationstar Mortgage LLC does business as "Mr. Cooper,"—a fictitious name wholly owned by Nationstar Mortgage LLC—and shares an identity of interest with "Mr. Cooper."

12. At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

13. At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

14. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

15. Under the FCRA, whenever a consumer reporting agency prepares a

consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

16. Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

17. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

18. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

19. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed

4

information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

20. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

21. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

22. At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt

23. At all material times herein, Nationstar, itself and through its

5

subsidiaries, regularly extends contracts for mortgages to consumers residing in Highlands County, Florida.

24. At all material times herein, Nationstar is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

25. At all material times herein, Nationstar reports information concerning an alleged mortgage referenced by account number beginning 6589- (hereinafter, the "Alleged Debt" or the "Account").

26. At all material times herein, Nationstar furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

27. At all material times herein, Equifax and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

28. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

29. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

## CREATION OF THE DEBT

30. On or about January 3, 2023, Plaintiff refinanced her Nationstar mortgage account (i.e., the Account).

31. After being refinanced, the Account was still serviced by Nationstar under a different account number, beginning -4340.

32. Most importantly, Nationstar instructed Plaintiff to cease paying on the Account, to redirect payment to the newly refinanced mortgage account, and advised Plaintiff that Nationstar would pay the remaining balance on the Account and close it, pursuant to the refinancing agreement. Please see attached a true and correct copy of the relevant pages from Plaintiff's Closing Disclosure labeled as Exhibit "A."

33. In other words, Nationstar was obligated to timely pay itself the balance owed on the original mortgage loan when finalizing Plaintiff's mortgage refinance.

34. Notwithstanding, Nationstar failed to pay the remaining loan balance to itself in a timely manner as required by the agreement, and as a result, Nationstar did not receive a payment on the Account within thirty (30) days of the monthly due date.

35. As a result of Nationstar's own mistake, Nationstar considered the mortgage Account more than thirty (30) days past due and reported the Account as thirty (30) days past due to Experian, Equifax, and Trans Union.

## PLAINTIFF'S DISPUTES TO NATIONSTAR
## REGARDING THE ACCOUNT AND DISPUTE RESPONSES
## FROM NATIONSTAR, EXPERIAN, EQUIFAX, AND TRANSUNION

36. In or around March 2023, Plaintiff learned that Equifax, Experian, and Trans Union were reporting the Account with inaccurate and/or materially misleading information.

37. More specifically, Trans Union reported the Account as "was 30 days past due date" under the "Pay Status."

38. Similarly, Equifax reported the Account as "was 30-59 Days Past Due" under Status.

39. Experian also reported the Account as "was past due 30 days" under Status.

40. On or about March 14, 2023, Plaintiff called Experian, Equifax, and Trans Union directly to dispute the aforementioned inaccurate reporting of the Account (hereinafter, "First Dispute").

41. More specifically, Plaintiff advised Experian, Equifax, and Trans Union that Plaintiff had made all payment on the Account in full and in a timely manner and that to the extent a late payment was made on the Account, it was due to Nationstar's error in failing to pay itself the remaining balance on the Account during the refinancing process.

42. In response to Plaintiff's First Dispute, Experian accurately updated its reporting of the Account to show the Account as closed with no late payment history.

43. Equifax and Trans Union each wholly failed to respond to Plaintiff's First

Dispute and continued to report the Account status as "was 30 days past due date" and/or "was 30-59 Days Past Due" on Plaintiff's credit reports and credit files.

44.     As such, on or about May 10, 2023, Plaintiff, with the assistance of her attorneys, sent a second dispute to Trans Union and Equifax (hereinafter, "Plaintiff's Second Dispute"). Please see attached a true and correct copy of Plaintiff's Second Dispute labeled as Exhibit "B."

45.     More specifically, Plaintiff's Second Dispute advised Trans Union and Equifax that Plaintiff had made all payment on the Account in full and in a timely manner and that to the extent a late payment was made on the Account, it was due to Nationstar's error in failing to pay itself the remaining balance on the former Account during the refinancing process and requested Trans Union and Equifax to update the account to show "Paid, Closed" and "Never Late" with no derogatory or late payment information.

46.     Additionally, Plaintiff's Second Dispute included copies of Plaintiff's Closing Disclosure, the corrected results from Experian following the First Dispute, and relevant pages from Equifax and Trans Union's current reports with the inaccurate information.

47.     Equifax received Plaintiff's Second Dispute.

48.     Equifax failed to respond to Plaintiff's Second Dispute.

49.     Trans Union received Plaintiff's Second Dispute.

50.     On or about June 1, 2023, Trans Union responded to Plaintiff's Second Dispute, purportedly verifying its inaccurate reporting of the Account.  Please see

attached a true and correct copy of the relevant pages of Trans Union's Second Dispute Response is attached as Exhibit "C."

51. To date, Nationstar is still reporting the Account as past due on Plaintiff's Equifax and Trans Union reports.

## DAMAGES

52. As a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Nationstar that she was not past due on the Account including supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account.

53. Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she will be denied credit as a result of the erroneous and incorrect reporting of the Account as thirty (30) days past due by Nationstar if she needs to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

54. Overall, Plaintiff suffered damage to her otherwise pristine credit reputation as a result of Defendant's conduct.

55. Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC d/b/a Swift Law PLLC for the purpose of pursuing this matter against Defendants.

56. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter

against Nationstar, Equifax, and/or Trans Union.

57. Nationstar's conduct was a direct and proximate cause of, as well as a substantial factor in, causing serious injuries, damages, and harm to Plaintiff.

**COUNT ONE:**
**BREACH OF CONTRACT**
**(As to Nationstar Only)**

Plaintiff re-alleges paragraphs one (1) through fifty-seven (57) as if fully restated herein and further states as follows:

58. Plaintiff entered into a contract with Nationstar in January 2023.

59. The immediately-aforementioned contract required Nationstar to payoff the remaining balance on Plaintiff's mortgage to itself during the refinancing process.

60. Nationstar failed to timely payoff Plaintiff's mortgage Account resulting in the Account being reported as thirty (30) days late.

61. Nationstar's conduct was a direct and proximate cause of, as well as a substantial factor in, causing serious injuries, damages, and harm to Plaintiff.

62. Nationstar's actions and inactions entitle Plaintiff to actual damages as well as attorneys' fees and costs.

**COUNT TWO**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(As to Nationstar Only)**

Plaintiff re-alleges paragraphs one (1) through fifty-seven (57) as if fully restated herein and further states as follows:

63. Nationstar is subject to, and violated the provisions of, 15 United States

11

Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax and Trans Union delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

64. As described above, Nationstar was required to timely pay itself during the refinance process..

65. In other words, it was no longer Plaintiff's responsibility to make a payment on the Account within thirty (30) days of the due date.

66. As such, it is materially misleading for Nationstar to continue to report Plaintiff as past due following multiple disputes.

67. Despite Nationstar receiving notice of Plaintiff's disputes from Equifax and Trans Union, Nationstar willfully and/or negligently failed to request that Equifax and Trans Union delete the late payment remark associated with the Account and continued to report derogatory, late payment information to Equifax and Trans Union.

68. Nationstar's credit reporting is materially misleading.

69. Nationstar's re-investigations were not conducted in good faith.

70. Nationstar's re-investigations were not conducted reasonably.

71. Nationstar's re-investigations were not conducted using all information and documents reasonably available to Nationstar.

72. As a result of Nationstar's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

73. Nationstar's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

74. Nationstar's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>**

Plaintiff re-alleges paragraphs one (1) through fifty-seven (57) as if fully restated herein and further states as follows:

75. Equifax and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow

13

reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

76. Equifax and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

77. Specifically, despite Plaintiff advising Equifax and Trans Union that Plaintiff was not past due on the Account— Equifax and Trans Union each continued to report the Account as 30 days or more past due, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

78. Further, Equifax and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax and Trans Union credit reports and credit file.

79. Such reporting of the Account is false and evidences Equifax and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

80. As a result of Equifax and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting

of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

81. Equifax and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

82. Equifax and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

<strong>COUNT FOUR:<br>
FAIR CREDIT REPORTING ACT –<br>
<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i</u></strong>

Plaintiff re-alleges paragraphs one (1) through fifty-seven (57) as if fully restated herein and further states as follows:

83. Equifax and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files, Section 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes,

15

including all relevant attachments, and Section 1681i(a)(5) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

84. Specifically, Equifax and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

85. Equifax and Trans Union did not request any documents from Nationstar corroborating information furnished and verified by Nationstar to Equifax and Trans Union regarding Plaintiff and the Account in response to any of Plaintiff's Disputes.

86. Overall, Plaintiff's First Dispute and Second Dispute provided Equifax and Trans Union with sufficient information allowing Equifax and Trans Union to identify their reporting errors with respect to the Account, and therefore, to correct their inaccurate reporting.

87. Plaintiff's First Dispute and Second Dispute advised Equifax and Trans Union that Plaintiff had made all payment on the Account in full and in a timely manner and that to the extent a late payment was made on the Account, it was due to Nationstar's error in failing to pay itself the remaining balance on the former Account during the refinancing process.

88. Additionally, Plaintiff enclosed copies of the Closing Disclosure with her Second Dispute.

89. Additionally, Equifax did not conduct an investigation or re-

investigation with respect to Plaintiff's First Dispute or Second Dispute.

90. Similarly, Trans Union did not conduct an investigation or re-investigation with respect to Plaintiff's First Dispute.

91. Despite Plaintiff's repeated disputes, Equifax and Trans Union continued to report the Account as 30 days past due when the Account was closed.

92. As such, Equifax and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

93. Such reporting is false and evidences Equifax and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

94. Equifax and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

95. Equifax and Trans Union's reinvestigations merely copied and relied upon the inaccurate Account information conveyed by Nationstar.

96. Equifax and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

97. Equifax and Trans Union's reinvestigation procedures are unreasonable.

98. Equifax and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Equifax and Trans Union.

99. Equifax and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax and Trans Union's reinvestigations of Plaintiff's

17

disputes and the Account.

100. As a result of Equifax and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

101. Equifax and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

102. Equifax and Trans Union's actions in violation of 15 United States Code, Section 1681i, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

    a.    Judgment declaring that Nationstar breached the contract;

    b.    Judgment against Nationstar for actual damages;

      c.      Judgment against Nationstar, Equifax, and Trans Union for maximum statutory damages for violations of the FCRA;

      d.      Actual damages in an amount to be determined at trial;

      e.      Compensatory damages in an amount to be determined at trial;

      f.      Punitive damages in an amount to be determined at trial;

      g.      An award of attorney's fees and costs; and

      h.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*
**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
11300 4th St. N. Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com

*Counsel for Plaintiff*

20